IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                                   CIV 09-1036 LH/KBM
                                                   CR  06-0344 LH

JOSEPH MILES DAVIS,

    Defendant-Movant.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

Defendant Joseph Miles Davis filed a motion seeking habeas relief under 28 U.S.C. § 2255. *See Docs. 1, 8.*[1] He is counseled, and his attorney prepared the § 2255 petition. *See id.* at 10-37; *see also Docs. 2, 3, 9, 10* (motions to appear *pro hac vice* granted). The issues are straightforward, and the background facts and arguments well-covered in the Tenth Circuit's opinion, the petition, and the United State's response. *See United States v. Davis,* 286 Fed. App'x 574 (10th Cir. 2008); *see also Docs. 1, 11.* I will not reiterate in detail what these sources present and confine my remarks mainly to my analysis. I recommend that petition be denied.

---

[1] Although the federal form for initiating a § 2255 action is captioned "motion," as is the common practice both in this Court and the Tenth Circuit, I refer to the document as a "petition." *See e.g., United States v. Shipp,* 589 F.3d 1084, 1086 (10th Cir. 2009) ("appeals the district court's denial of his 28 U.S.C. § 2255 habeas petition"). Unless otherwise noted, citations to *"Doc."* are the documents filed in this civil action.

Because the issues are conclusively resolved by the record alone, an evidentiary hearing is not necessary.[2]

## I. Background

### A. Trial Proceedings

Circuit Judge Paul R. Kelly, Jr. presided at trial and sentencing in this matter. After a jury found Defendant guilty of conspiracy to distribute PCP, Judge Kelly departed downward and sentenced him, among other things, to incarceration for 210-months. *See United States v. Davis*, CR 06-0344 LH (Docs. 168-69, 181-83). The habeas challenge, however, involves Defendant's unsuccessful motion to suppress items resulting from the search of his backpack at the Los Angeles airport. District Judge LeRoy Hansen presided at the evidentiary hearing for the motion to suppress. Defendant and the officers who stopped him testified at the hearing, and Judge Hansen gave his reasons for denying the motion from the bench. *See id.* (Docs. 108-09); *id.* (transcripts in separate folder associated with the 11/8-9/06 proceedings [hereinafter "*Suppression Transcript*"]); *see also Davis*, 286 Fed. App'x at 577.

Defendant's grounds for suppression have changed somewhat over the course of the

---

[2] *See* 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); Rule 8(a), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS ("If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."); *see also e.g., United States v. Gonzalez*, ___ F. 3d ___, 2010 WL 702297 at * 15 (10th Cir. 2010) ("Finally, we reject Gonzalez's contention that he is entitled to a COA on the question of whether the district court erred by failing to conduct an evidentiary hearing on any of the issues raised by Gonzalez in his § 2255 motion. Having carefully examined the record on appeal, we readily conclude that there were no relevant, disputed issues of fact that needed to be resolved, and in turn no need for an evidentiary hearing."); *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996) ("In response to a § 2255 motion, the district court must hold an evidentiary hearing on the prisoner's claims unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.") (internal quotations and citations omitted).

various proceedings. In her written motion, Defendant's trial attorney argued that the officers did not have reasonable suspicion to approach Defendant in the first instance, and that his agreement to let them search his backpack was the nonconsensual product of coercion. *See e.g., United States v. Davis,* CR 06-0344 LH (Doc. 84 at 1, 5, 8); *Davis,* 286 Fed. App'x at 576-77. At the suppression hearing, trial counsel discontinued the "reasonable suspicion" argument and instead conceded that the encounter began consensually. She maintained that the encounter evolved into a coercive one because Defendant "did not give explicit verbal consent for the search and was not actually free to leave because one of the officers had taken possession of his backpack." *Davis,* 286 Fed. App'x at 578; *see also Suppression Transcript* at 192-197.

Judge Hansen rejected that Defendant's version of events finding that his testimony was not credible. Specifically, Judge Hansen found that Defendant "retained possession of the backpack in the airport" and "said 'okay' when asked whether he would consent" to a search of it. *Davis,* 286 Fed. App'x at 578; *see also Suppression Transcript* at 213-15. Indeed, Judge Hansen credited the testimony of the officers that, while in possession of his passport and backpack, Defendant voluntarily followed the officers out of the baggage claim area, across the traffic area where taxis and other vehicles arrive to pick up passengers, and some 200 to 300 feet to an office area where the search was conducted. *See id.* at 36-37, 78-80, 82, 109, 213.

### B. Direct Appeal

Following a conviction at trial, Defendant's trial counsel was permitted to withdraw and new counsel appointed. This new attorney represented Davis for sentencing, filed the notice of appeal and is listed as the attorney of record in the Tenth Circuit's opinion on direct appeal. *See e.g., United States v. Davis,* CR 06-0344 LH (Docs. 151, 155-56, 165, 170); *Davis,* 286 Fed. App'x at 575. However, the attorney who now appears in this habeas action *pro hac vice,*

William M. Kent, was the lawyer who actually prepared the written appeal briefs and attended oral argument in the Tenth Circuit. *See e.g., Doc. 9* at 2, n.1; *United States v. Davis,* No. 07-2101 (Document: 0101129159 filed 02/11/08 [hereinafter *"Appellant's Corrected Brief"*] and Doc. 0101154932 filed 3/28/08 [hereinafter *"Appellant's Reply Brief"*]).

At the Tenth Circuit, Mr. Kent did "not quarrel with [Judge Hansen's] findings" that Defendant maintained possession of the backpack and gave consent to search it. *Id.* at 578. He also acknowledges that at the time of the encounter, Davis was in the baggage area and no longer in the secured area of the airport where all individuals are subject to administrative searches without any particularized suspicion.[3] Even so, Mr. Kent made a truly novel argument posited on "an issue of first impression in this Circuit and perhaps in any Circuit, that is, the effect of the post-9/11 security environment on the voluntariness of police encounters and baggage searches in airports." Counsel argued that

> the basic police practice of approaching passengers in an airline terminal in mid-journey to engage in *ad hoc* questioning is highly coercive. . . . Travelers feel compelled – are compelled – to cooperate with the police, even if they might rather not, in order to avoid the risk of unhappy consequences. The approach will often be made in a city unfamiliar to the passenger, usually a city where, because it is an intermediate stop on his journey, he had not intended presently to spend time. The passenger knows only that under the new rules in place to fight the War on Terror, he has generally been deemed to have surrendered substantial Fourth Amendment protections simply by being a traveler in 21st Century America. The average traveler is not a lawyer and is not versed in the intricacies of where the Fourth Amendment starts and where it stops, where exactly the shadow of authority has blocked the light

---

[3] Pursuant to 49 C.F.R. § 1540.107(a), "[n]o individual may enter a sterile area or board an aircraft without submitting to the screening and inspection of his or her person and accessible property in accordance with the procedures being applied to control access to that area or aircraft under this subchapter."

> of liberty, within an airport. He only knows that within an airport he generally must do as he is told or risk ending up becoming the subject of the nightly news in an unflattering and decidedly unwanted way.

*Appellant's Corrected Brief* at 27-28; *see also id.* at 29-32. On appeal, counsel argued that a reasonable airline passenger even in unsecured areas of the airport "would not feel free to ignore police questioning and leave the airport after airport officers initiate an encounter . . . nor feel free to refuse a request to search." *Appellant's Corrected Brief* at 22. He also insisted that subjectively Defendant was especially likely to succumb to the coercive environment because

> the officers made a visible "show of authority" as they confronted Mr. Davis by flashing their badges and carrying of what appeared to be (and, in fact, were) guns. They made no announcement of the routine character of their inquiries, nor did they inform Mr. Davis that he was free to leave or to decline to answer any questions, or not consent to any search. Having been arrested in similar circumstances before, and having been to federal prison and subjected to five years of federal supervised release, Mr. Davis, much more than the average citizen, had been taught to obey and acquiesce to authority. A reasonable person, much less a person with Mr. Davis's history, who found himself in such a position, confronted by two police officers, would not have felt free to walk away and terminate the interview. *See Florida v. Royer,* 460 U.S. at 502-03. Mr. Davis was therefore seized within the meaning of the Fourth Amendment.

\* \* \* \* \*

> . . . There was no intervening "independent act of free will," *Florida v. Royer,* 460 U.S. at 501, that even arguably separated Mr. Davis's seizure from his alleged consent to the search of his bag.

*Id.* at 24-25. This argument ignores that it is the objective "reasonable person" standard, not the subjective belief of the defendant, that applies in determining the voluntariness of consent to an encounter with police or of giving of consent to search.

Defendant's appellate counsel also asserted that the "facts of this case strike a familiar chord with most freedom-loving Americans . . . The image of police officers asking passengers for their 'papers,' and subjecting them to *ad hoc* inquiries, is one that until September 11, we

have been fortunate to regard as an abhorrent creature of authoritarian regimes [and] are unreasonable, most fundamentally, because they do not fit with most Americans' sense of how they are supposed to be dealt with by their Government." *Id.* at 33. Mr. Kent then sought to resurrect the argument abandoned by trial counsel that the officers' initial decision to approach Defendant was a "random" act, an exercise of "unbridled discretion," *id.* at 35, for which there was no "reasonable, articulable suspicion,", *id.* at 33-34.

In so arguing, Mr. Kent failed to mention that the officers' attention was drawn to Davis because he "was standing in the baggage claim area adjusting his pants, which were partially down, with the fly open and the belt unfastened." *Davis*, 286 Fed. App'x at 575. One officer testified that, in his experience, this behavior was "absolutely" strange for someone who was not in a secured area of the airport and who had not just undergone a screening procedure. *See e.g., Suppression Transcript* at 35-36, 53, 66, 98. On the other hand, it was also this officer's experience that people conceal large amounts of cash on their person to avoid detection at the security checkpoints, and that they transfer the uncomfortable wads of cash to a bag once they clear the checkpoint, either on the plane or in an airport bathroom. *E.g. id.* at 101-102. Moreover, when the officers "approached Davis [they] told him that he was not in trouble and not under arrest [and] asked him why he was adjusting his pants and inquired about his travel plans [and] inquired if he was carrying a large amount of currency," *Davis*, 286 Fed. App'x at 575, to which Defendant replied "about $5,000." *Id.; see also Suppression Transcript* at 37.

Ignoring those points, counsel instead emphasized that the officers did not inform Defendant "that he had the right to refuse consent." *Appellant's Corrected Brief* at 37 (calling the omission a "clearly a purposeful and conscious decision on the part of the Detectives . . . because they feared it would decrease the effectiveness of . . . the implicitly coercive

environment of the airport."). Citing to the Supreme Court in *United States v. Drayton*, 536 U.S. 194 (2002), however, Mr. Kent acknowledged that while "failure to advise . . . of the right to refuse consent . . . cannot be converted into a *per se* rule of exclusion*,*" but stressed that it is a factor to consider in the totality of the circumstances. *Appellant's Corrected Brief* at 37. He maintained that

> [a] reasonable person would not have known where the contours of permitted TSA law enforcement searches begin and where they end and thus a reasonable person would have felt constrained to cooperate with police who requested permission to search a bag while in an airport terminal, whether it be when approaching the screening area or taking a bag from a luggage carousel.

*Appellant's Reply Brief* at 4 (emphasis added).

The Tenth Circuit, however, did not assume that the matter was purely a question of law. It observed that "there is nothing in the record regarding the effect the post-9-11 airport security has had on passengers' willingness to consent to search [and without it] we would be forced to decide the issue in this case based on speculation or our own personal experiences with post 9-11 airport security [which is] inappropriate . . . for an appellate court." *Davis*, 286 Fed. App'x at 578.

As for addressing the merits of the above arguments, the Tenth Circuit found the "reasonable suspicion" argument waived due to trial counsel's concession.[4] On the other hand, the Tenth Circuit found that the "911" theory was not waived and only "arguably forfeited" due to trial counsel's failure to raise the theory "squarely before the district court." *Davis*, 286 Fed.

---

[4] *Davis*, 286 Fed. App'x at 578, n.3 ("Davis has indeed waived one line of reasoning . . . that his initial "detention" in the airport was not supported by reasonable suspicion. But trial counsel affirmatively conceded at the suppression hearing that the officers; questioning was consensual at the outset and, therefore, reasonable suspicion was not required to initiate questioning. As to his remaining contentions, Davis' arguments in the trial court do not so clearly controvert his reasoning on appeal that we may comfortably apply the waiver doctrine.").

App'x at 578. It, in fact, did address the "[911] reasoning . . . to the extent that it overlaps with arguments presented to the district court." *Id.* In so doing, it held that the circumstances surrounding Defendant in the Los Angeles baggage claim area were not coercive, reasoning in full:

> Davis contends that he was "seized" at the moment officers began questioning him, and that this seizure rendered his subsequent conduct and consent to the search of his bag involuntary. His "post-9/11" argument is in essence one of coercion, specifically that the airport, combined with the officers' actions, was so inherently coercive that he could not have voluntarily consented to the encounter and the search. . . .
>
> In evaluating whether an encounter is consensual, we have considered [a number of factors]. These factors almost uniformly indicate a consensual encounter. The officers approached Davis in a public area and asked him questions to which he calmly responded. They were wearing plain clothes, and their weapons were not visible during the discussion. To the extent that Davis intimates that heightened security protocols intimidated him into consenting, this argument is particularly weak considering that Davis was not in a secure area of the airport but rather in the baggage claim area. It is true that the officers did not explicitly advise Davis that he could walk away at any time, but they did plainly tell him that he was not under arrest. Moreover, "[a]n explicit advisement . . . is not a *requirement;* it is merely a factor to be considered in the totality of the circumstances." *Spence,* 397 F.3d at 1284 (quotation omitted).
>
> The same is true for Davis' consent to a bag search after he followed the officers across the street to the security office. "In determining whether a consent to search was free from coercion, a court should consider, inter alia, physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant within the totality of the circumstances." *United States v. Pena,* 143 F.3d 1363, 1367 (10th Cir. 1998) (quotation omitted), *cert. denied,* 525 U.S. 903 (1998). None of these factors were present in the security office. The door of the office was open for most of the interview and search, and the officers never laid hands on Davis, or made any promises. In addition, the district court found that Davis continuously

-8-

> maintained possession of his bag until it was searched, and that he was thus physically free to leave with his belongings at any time. Regarding his mental condition, Davis does not contest the district court's factual findings that Davis was intelligent. In short, because Davis' consent to the search of his bag lacked a single coercive element, we find no error in the district court's denial of his motion to suppress. Furthermore, because Davis has not shown that his initial encounter with police violated the Fourth Amendment, the search that followed was not automatically the product of an illegal seizure, but was instead properly supported by Davis' continued consent.

*Id.* at 578-79. Thus, Judge Hansen's decision was affirmed on appeal.

## II. Analysis

Davis' habeas petition raises an ineffective assistance of counsel claim based the same two claims that he raised before the Tenth Circuit:

> trial counsel should have argued that the law enforcement officers who initially encountered Davis did not have reasonable suspicion to temporarily detain Davis and should have further argued that the heightened security measures at an airport such as Los Angeles International Airport after the terrorist attacks of 9/11, created an environment in which Davis' apparent consent was not freely and voluntarily given but the product of the coercive environment post 9/11 and counsel should have made a factual record to support that argument.

*Doc. 1* at 11. Here, however, instead of raising the issue as a pure question of law, habeas counsel also characterizes trial counsel's deficiencies as a failure to factually support and assert "the best (and winning) legal arguments." *Id.* Nonetheless, he again specifically argues that the key factual evidence trial counsel should have introduced at the hearing before Judge Hansen was that Defendant was not informed he could decline the officer's questions and requests:

> arriving passengers are warned that they and their luggage are subject to search and that they are required to comply with instructions from law enforcement offices in the airports subject to arrest for failure to do so. ***Departing passengers are not advised that once they have arrived that their luggage is now no longer subject to search after it reaches the baggage claim area. Counsel could have introduced evidence of this*** from both airports to establish Davis's state of mind.

> Counsel additionally could have introduced and made part of the record the applicable FAA regulations governing the right of airport authorities to search passengers and baggage at airports.

*Id.* at 36-37 (emphasis added).[5] He maintains that, had trial counsel done so, Judge Hansen

---

[5] I have reviewed Federal Aviation Administration and Department of Homeland Security regulations. The regulations appellate/habeas counsel alludes to no doubt are the same ones he raised in his reply brief on direct appeal. *See Appellant's Reply Brief* at 2-3 (citing 49 C.F.R. §§ 1540.107, 1544.203(e)). These are the regulations that allow airlines/airline officials to reject any bag or passenger unless the passenger consents to search. They are based, however on statutory screening and implied consent authority that long precedes 9/11. *See e.g., National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 675, n.3 (1989) ("airport screening program . . . In the 15 years the program has been in effect, more than 9.5 billion persons have been screened, and over 10 billion pieces of luggage have been inspected."); 49 U.S.C.A. § 44901 (a) (pre-2001 version read: "The Under Secretary of the Federal Aviation Administration shall prescribe regulations requiring screening of all passengers and property that will be carried in a cabin of an aircraft in air transportation or intrastate air transportation. The screening must take place before boarding and be carried out by a weapon-detecting facility or procedure used or operated by an employee or agent of an air carrier, intrastate air carrier, or foreign air carrier." and presently reads: "The Under Secretary of Transportation for Security shall provide for the screening of all passengers and property, including United States mail, cargo, carry-on and checked baggage, and other articles, that will be carried aboard a passenger aircraft operated by an air carrier or foreign air carrier in air transportation or intrastate air transportation.") ; *id.*, § 44902 (authorizing regulations to mandate that airlines "to refuse to transport . . . a passenger who does not consent to a search under section 44901(a) . . . or . . . property of a passenger who does not consent to a search of the property;" authorizing airlines, consistent with any regulations adopted, to "refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety;" and providing that any "agreement to carry passengers or property in air transportation . . . is deemed to include an agreement that the passenger or property will not be carried if consent to search the passenger or property for a purpose referred to in this section is not given;" post-2001 amendments did not alter substance and only substituted TSA for FAA); 49 C.F.R. § 1540.107 (a) ("No individual may enter a sterile area or board an aircraft without submitting to the screening and inspection of his or her person and accessible property"); *id.*, § 1544.203(e) ("Each aircraft operator must refuse to transport any individual's checked baggage or property if the individual does not consent to a search or inspection of that checked baggage or property in accordance with the system prescribed by this part.").

   Appellate/habeas counsel's argument on appeal was not that the screening procedures were newly-enacted post-9/11, but that the screenings in secured areas for passengers seeking to board a plane "increased." *Appellant's Reply Brief* at 1, n.1; *id.* at 1, n.1 (citing portion of H.R.Rep. No. 107-296, at 53-54 (2001) (Conf.Rep.), as reprinted in 2002 U.S.C.C.A.N. 589, 590, where the conferees noted that the 9/11 attacks "which converted civil aircraft into guided bombs for strikes against the United States, required a fundamental change in the way it approaches the task of ensuring the safety and security of the civil air transportation system," while omitting the findings that the changes were to transfer the responsibility for security functions to the federal government , to have U.S. Marshals' conspicuously present on flights, and the "effectiveness of existing security measures . . . is currently impaired because of the inaccessibility of, or the failure to share information among, data bases maintained by different Federal and international agencies for criminal behavior or pertinent intelligence information."). He also

would have certainly granted the motion and suppressed all of the evidence 'derived" from the search, including the drugs found on the codefendant and the codefendant's testimony against Davis, thereby making it "impossible" for the prosecution to have secured a conviction. *Id.* at 11. I find the habeas claims waived and, alternatively, without merit.

## A. *Claims Raised And Decided On Direct Appeal Are Waived*

The two arguments Defendant asserts that trial counsel should have raised are identical or inextricably linked to claims raised and decided on direct appeal – one which the Tenth Circuit found waived and one it found without merit. Claims that have already been addressed by the Tenth Circuit on direct appeal cannot be relitigated in a § 2255 petition.[6] Ineffective assistance of counsel claims can be raised for the first time in a § 2255 petition, and are not defaulted for failing to raise them on direct appeal.[7] Nonetheless, where, as here, claims raised on direct

---

made it clear, however, that the regulations *did not* apply to Defendant because he was in the *baggage claim* area. *See id.* at 2 ("before passengers may be permitted to board any civil aircraft or enter certain areas of airports they must consent to screening and inspection of their baggage"); *id.* at 3 ("But the search in Davis's case did not take place within a portion of the airport that was subject to administrative search; it took place at the baggage retrieval area of the airport. The Government has not asserted that this area was a sterile area subject to administrative search under 49 CFR § 1540.107. Indeed it is not. So in Davis's case his free and voluntary consent was required to uphold this search.").

[6] *See e.g., United States v. Wade,* 342 Fed. App'x 375, 377 (10th Cir. 2009) ("In fact, we rejected this argument on direct appeal . . . The district court was correct to reject this claim, inter alia, because we had previously rebuffed it on direct appeal") (citing *United States v. Warner,* 23 F.3d 287, 291 (10th Cir. 1994) which holds that a "defendant's failure to present an issue on direct appeal bars him from raising the issue in his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed"); *United States v. Varela-Ortiz,* 189 Fed. App'x 828, 830 (10th Cir. 2006) ("Because we already disposed of this issue on direct appeal, Mr. Varela-Ortiz may not raise it again in a § 2255 petition.") (citing *Warner,* 23 F.3d at 291 and *United States v. Prichard,* 875 F.2d 789, 791 (10th Cir. 1989) (which holds, "Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255.")).

[7] *See e.g., United States v. Smith,* 2008 WL 55996 at *2, n.1 (10th Cir. 2008) ("The rule in this circuit, then, is that claims of constitutionally ineffective counsel should be brought on collateral review, in the first petition filed under 28 U.S.C. § 2255. Some rare claims which are

appeal are later "cloaked in the guise of an ineffective assistance claim [they] cannot be raised again in a § 2255 [petition]." *United States v. Anderson,* 17 Fed. App'x. 855, 858 (10th Cir. 2001) (citing *United States v. Cox,* 83 F.3d 336, 342 (10th Cir. 1996)); *see also United States v. Davis,* 406 F.3d 505, 511 (8th Cir. 2005) ("We find the present claim to be the same claim in different clothes, and we will not reconsider the issue on collateral review.").

In my view, the Tenth Circuit's holding on direct appeal effectively finds the lack of a countermanding notification by the officers did not vitiate Defendants' consent or render the atmosphere of the airport "coercive" as a matter of law. This is the underlying basis for both of the ineffectiveness claims and, accordingly, this Court should not be reconsidering the argument in habeas proceedings.

I recognize, however, that there is room for argument under the circumstances of this case. For example, taking a cue from the Tenth Circuit's decision, habeas counsel's ineffectiveness arguments now contain a "failure to develop facts" aspect, which is not identical to the claim on direct appeal and something the Tenth Circuit expressly declined to decide. Also, the Tenth Circuit's finding that the "reasonable suspicion" argument was waived by trial counsel is the enforcement of a procedural default, which can be excused by counsel's ineffectiveness.[8] Thus, I will, alternatively, address the merits of the ineffectiveness claim. *See*

---

fully developed in the record may be brought either on direct appeal or in collateral proceedings. No procedural bar will apply to claims which could have been brought on direct appeal but were brought in post-conviction proceedings instead.") (citing *United States v. Galloway,* 56 F.3d 1239, 1242 (10th Cir. 1995) (*en banc*) and *Massaro v. United States,* 538 U.S. 500, 504-09 (2003)).

[8] Rule 12(e) of the Federal Rules of Criminal Procedure provides that a motion to suppress "defense, objection, or request" is waived if not raised before the deadline set by the Court for pretrial motions and new arguments made on appeal for suppression are deemed waived, as here, unless there is a showing of "cause and prejudice." *See United States v. Hamilton,* 587 F.3d 1199, 1213-16 (10th Cir. 2009). One way to show cause for a procedural default is by showing "that his claim was 'so novel that its legal basis [was] not reasonably available to counsel," *United States v. Wiseman,* 297 F.3d 975, 979

-12-

*United States v. Martinez*, 303 Fed. App'x 590, 592 (10th Cir. 2008) (" It is not clear that this Court's holding on direct appeal . . . can be viewed as "effectively" considering and disposing of Mr. Martinez's claim that his counsel was constitutionally ineffective. At least arguably, the legal framework under which we resolved the allegation of district court error would neither be roughly coterminous with, nor fully encompass, the *Strickland* framework under which we would decide Mr. Martinez's ineffective assistance claim. However, we need not definitively reach that issue.").

### B. Claims Are Without Merit

Under *Strickland v. Washington*, 466 U.S. 668 (1984), Defendant must demonstrate that counsel's conduct was constitutionally deficient and that but for the conduct, the result of the proceeding would have been different. Failure to make either showing defeats the claim. *E.g., Smith v. Robbins*, 528 U.S. 259, 286, n.14 (2000); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Orange*, 447 F.3d 792, 796-97 & n. 5 (10th Cir. 2006). Defendant fails both prongs here.

Habeas counsel argued a novel theory to the Tenth Circuit and cited no decisions for the proposition that, as a matter of law, the post-9/11 atmosphere in airports is so coercive that, as a matter of law, it vitiates any consent. He likewise does not cite any cases in the habeas petition arguments. Neither I nor the United States found any such decision. *See Doc. 11* at 8.

Under *Strickland*, this Court's review of trial counsel's conduct must be "highly

---

(10th Cir. 2002) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)), or that "counsel rendered constitutionally ineffective assistance," *id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991) and *United States v. Kissick*, 69 F.3d 1048, 1054-55 (10th Cir. 1995)), or that "the constitutional error 'has probably resulted in the conviction of one who is actually innocent,'" *id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623-24 (1998)); *see also United States v. Acox*, 595 F.3d 729, 734 (7th Cir. 2010) ("A motion under § 2255 is the right way to obtain review of contentions that an attorney's carelessness caused a waiver under Rule 12(e). The record on direct appeal lacks the evidence needed to make such a decision.").

deferential" because it is "all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689. Trial counsel's conduct is not viewed from "the distorting effects of hindsight," it is viewed from counsel's perspective at the time. *Id.* And, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In other words, "the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.*

This is a "'heavy burden,'"[9] and one that cannot be met here because "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac,* 456 U.S. 107, 134 (1982). Indeed, "[Defendant] himself states that this argument would have been novel, which is a clear basis for the denial of this claim. . . . Counsel cannot be deficient for failing to argue a point that is contrary to controlling law, and failing to make this novel argument is not ineffective." *Hilliard v. United States,* 2009 WL 3064869 at * 5 (E.D. Mo. 2009). This is so even if this Court believed that the "*per se* coercive post-9/11" argument had any merit, which I do not. *See King v. United States,* 595 F.3d 844, 853 (8th Cir. 2010) ("we must 'judge the reasonableness of counsel's challenged conduct. . . as of the time of counsel's conduct.' . . . That we now conclude King's argument prevails does not necessarily mean his attorney was incompetent for failing to pursue it. *See, e.g., Anderson v. United States,* 393 F.3d

---

[9] *E.g., United States v. Challoner,* 583 F.3d 745, 749 (10th Cir. 2009) (quoting *Fox v. Ward,* 200 F.3d 1286, 1295 (10th Cir. 2000)).

749, 754 (8th Cir. 2005) (counsel was not ineffective for failing to raise an argument which 'may have had merit," but which was "a wholly novel claim at the time').") (certain internal quotations and citations omitted).

As for trial counsel's failure to introduce "evidence" of the alleged post-9/11 coercive atmosphere and its effect on Defendant, or her failure to persist in the "reasonable suspicion" argument she initially pursued in her written motion, the claim of ineffectiveness makes no logical sense in light of Defendant's own testimony at the evidentiary hearing. Defendant did not testify that he was scared or nervous or in any way coerced. To the contrary, he conceded that at the outset of the encounter the officers indicated that there was "no problem," and testified that when he was flanked closely by two officers who were asking his permission to search, he did not consent and instead questioned their authority, and only followed them to the office because one of the officers had taken possession of his backpack.[10] Thus, there is no basis in the record to conclude that trial counsel's alleged omissions were objectively unreasonable. Had she submitted evidence that persons in post-9/11 airports know that they must submit to a search to board an airplane but do not know that they need not do so to leave the baggage area,

---

[10] *See e.g., Suppression Transcript* at 117 ("the conversation was interesting, because part of it was he was shooting questions at me, and the other part, I felt like I had to keep answering questions, and some moments, it felt like it was just a conversation"); *id.* at 119 ("He asked me if I was carrying large sums of money . . . I said 'yes ' . . . He [asked] if he could search the bag, and I said, 'Is that your job? . . . I didn't say 'okay.' I asked him if that was his job . . they are like bookending me . . . standing closer than three feet from me"); *id.* at 120 ("he said, 'How much? ' I said, 'About $11,000.' . . . he said, 'This is not a good place to conduct a count. Let's go to the office.'"); *id.* at 122 ("[did] you feel like you had a choice . . . No, he had my bag."); *id.* at 128-29 ("did you feel like you could leave at that point? . . . No . . . his partner had my backpack, and he was walking ahead . . . I wasn't going to walk away without my bag."); *id.* at 152-53 ("when you asked him, 'Is that your job,' . . . what did you mean by that? . . . I mean is that your job to search my bag, do you have the authority to search my bag."); *id.* at 177 (on redirect: "My meaning was that, 'Do you have the authority to do that? Is that what you're supposed to do?' . . . So it was not really a consent . . . ? . . . No. . . . You were just questioning his authority. Is that correct? . . . Yes.").

would have been in direct contradiction to Defendant's assertion that he in fact did not consent to the search.

Even if he could establish the first *Strickland* prong, Defendant cannot establish prejudice. Judge Hansen found Defendant not credible for several reasons. One reason he cited was because Defendant is "very intelligent," one who had "a prior arrest and conviction where he actually did give consent to the search of his luggage which included incredibly incriminating evidence," but in this circumstance, "had no reason to believe there was anything incriminating in his backpack . . . [e]verbody can carry money in their backpack or briefcase." *Suppression Transcript* at 213. Moreover, Defendant's testimony was internally contradictory – Defendant testified he took off his belt and shoes going through airport security and was running late so he never got around to putting on his belt or tying his shoes from the time he cleared security, in Las Vegas through boarding the plane, taking the flight, landing, and walking from the Los Angeles gate through the airport and to the baggage claim area while passing several bathrooms. Instead, he held his pants up with his pinky finger during this time and left one of his shoes untied. *See id.* at 138, 141-43, 147-49 (Defendant recounting on cross-examination the length his belt and shoes remained undone); *id.* at 214 (Judge Hansen's ruling). Judge Hansen made his decision based on a consideration of the "totality of the circumstances," *id.* at 213, and concluded that Defendant's consent was "unequivocal and freely and intelligently given [without] any withdrawal . . . or . . . any duress or coercion applied at the time fo the consent or during he subsequent search of the bag [and that other factors that can evidence coercion were] negative . . . wasn't anything, any of that present." *Id.* at 215.

Even if trial counsel had introduced the post-9/11 evidence as a reason why Defendant consented and Defendant testified consistently with that theory, the totality of the circumstances

would not have changed in any significant way. First, there is little to no probability that this evidence would have changed Judge Hansen's reasoning because he still would have found Defendant's testimony not credible in light of Defendant's intelligence, prior experience with a luggage search, fact that he had nothing to hide on this occasion, and the patently incredible belt/pants explanation. Second, as habeas counsel conceded on appeal, there is no constitutional or legal requirement that officers inform people that they speak to that the person is free to leave and need not consent. At most it is but one factor in the analysis, and the Tenth Circuit has already concluded that the fact the officers did not inform Defendant of the same would not have swayed the analysis that the encounter was entirely consensual, the same conclusion Judge Hansen reached.[11] Thus, since nothing undermines the findings of consent and lack of coercion, there can be no "prejudice" from trial counsel's decision to drop the "reasonable suspicion" argument. *See e.g., United States v. Fox,* ___ F.3d ___, 2010 WL 1027609 at ** 3-4 (10th Cir. 2010) (Fourth Amendment not applicable to wholly consensual encounters) (and authorities and principles cited therein).

Wherefore,

---

[11] *See e.g., United States v. Drayton,* 536 U.S. 194, 206-07 (2002) ("The Court has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search. . . . 'While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent.'" . . . Nor do this Court's decisions suggest that even though there are no per se rules, a presumption of invalidity attaches if a citizen consented without explicit notification that he or she was free to refuse to cooperate. Instead, the Court has repeated that the totality of the circumstances must control, without giving extra weight to the absence of this type of warning.") (citing *Ohio v. Robinette,* 519 U.S. 33, 39-40 (1996); *Schneckloth v. Bustamonte,* 412 U.S. 218, 227 (1973)); *United States v. Carbajal-Iriarte,* 586 F.3d 795, 799 (10th Cir. 2009) ("The Supreme Court has held that a defendant's consent to a search may be voluntary even when the consenting party was not informed he could refuse. . . . Thus, the mere fact Agent Small did not specifically tell Carbajal-Iriarte that he was allowed to decline the request does not render the consent involuntary.") (citing *Schneckloth*); *United States v. Guerrero,* 472 F.3d 784, 790 (10th Cir. 2007) ("Nor is an officer required to inform a defendant explicitly that he is free to go before requesting permission to search.") (citing *Robinette*).

**IT IS HEREBY RECOMMENDED** that Defendant's § 2255 petition be dismissed with prejudice.

> THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE